Buckingham *v.* Smith.

---

### S. H. BUCKINGHAM *vs.* WILLIAM E. SMITH.

B., during the time he was clerk of the circuit court, employed S. to publish in his newspaper on advertisement of the sale of judgments for the costs due thereon, and B. received a benefit from said sale. *Held*, that B. stood in the same attitude towards S. that any other person would, who had employed a printer to do work for him, and there is an implied assumpsit, that he (B.) would pay the value of the work performed.

He (B.) would have a right to demand and receive from the sheriff, out of the proceeds of the sale, priority of payment to the amount so due to the printer, before payment and distribution by the sheriff of any portion, to any other person interested in the sale and entitled under the order to receive it.

As there was no special agreement between B. and S. for pay for the work done by S., therefore he could only recover upon the *quantum meruit*. *Held*, from the evidence, that the judgment in the court below was rendered for more than the services were proven to be worth.

IN error from the circuit court of Monroe county; Hon. F. M. Rogers, judge.

The facts of the case are sufficiently stated in the opinion of the court.

*Lindsey & Copp*, for plaintiff in error.

*S. Cocke*, on the same side.

*Davis & Acker*, for the defendant in error.

44*

Buckingham *v.* Smith.

Mr. Justice YERGER delivered the opinion of the court.

Smith, the publisher of a newspaper, sued Buckingham, who had been clerk of the circuit court of Monroe county, to recover an amount, which he alleged was due, for advertising and publishing the sale of eighty judgments, directed by order of the court to be sold for the payment of the costs due and unpaid. The only witness in the cause testified, that the order of sale was made on the motion of Buckingham, the clerk of the court; that the sale was advertised in the paper of the plaintiff, but by whose direction the witness did not know. At the sale Buckingham was present, and bought twenty-four of the judgments for the costs due upon them. The remaining judgments were bought by other parties. Some of them sold for the amount of the costs, others did not. At the sale, the witness asked what was the printer's fee for advertising, and was told it was $5 in each case. The witness did not know who made this remark, nor did he know whether Buckingham heard it or not, although he was present. Witness also testified that he had had similar work done at the same office since then, at the rate of $1.50 to $2.50 for each case. The jury found a verdict for the plaintiff for the sum of $514. A motion for a new trial was made, and refused.

Upon this state of facts the question is presented. Was Buckingham liable to the plaintiff for the price of the advertisements? It appears from the proof that the order of sale was made on the motion of Buckingham. He was interested in the sale to the amount of the costs due to him as clerk in all the cases, and of course the sale to that extent would enure to his benefit. As clerk of the court, he issued, and placed the order of sale in the hands of the sheriff. When the sheriff received it, it became his duty, under the law, to advertise the sale in a newspaper. To whom was the printer to look for payment? It is true, several parties were interested in the proceeds of the sale. But it is no less true, that the order of sale was made on the motion of defendant, Buckingham, that he might obtain payment of the amount of costs due him. He placed the order of sale in the hands

of the sheriff, and expected to receive, and in fact did receive, a direct pecuniary benefit from the sale. In our opinion, he therefore stood in the attitude which any other person would occupy towards the printer, at whose instance, and for whose benefit, he had performed work; and the law would raise an implied assumpsit, that he would pay the value of the work performed. At the same time, we have no doubt that he would have a right to demand and receive from the sheriff, out of the proceeds of the sale, priority of payment of the amount so due to the printer, before payment and distribution by the sheriff of any portion realized by the sale to any other person interested in the sale, and entitled under the order to receive it. This being our opinion of Buckingham's liability, the question arises for what amount the jury should have rendered a verdict. There was no special contract made, or specific price agreed upon; and, of course, Smith could only recover upon a *quantum meruit*, the value of the work done by him. What was that? The witness Pollard proves that some one said, at the sale, that the printer's charge was $5 in each case. But there was no proof that such a charge was reasonable, just, or usual; and the witness had had similar work done subsequently at one third to one half of that amount. Eighty cases were advertised. The verdict of the jury was for $514. It is clear, then, that they allowed the plaintiff at least $5 for each case, and interest on that amount till the verdict. There was no evidence to warrant a verdict for such a sum. The only evidence of value before them, to wit, the price for which the party subsequently did similar work, only authorized a verdict for half that amount. The court ought, therefore, to have granted a new trial, because the verdict of the jury was without sufficient evidence to sustain it. For the refusal to do so, the verdict must be reversed, the cause remanded, and a new trial awarded.